UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

Eastern District of Kentucky
FILED

JAN 2 4 2007

AT LONDON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 06-128-GWU

MELVIN ROSE,                                              PLAINTIFF,

VS:                            MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT,

INTRODUCTION

Melvin Rose originally brought Rose v. Barnhart, London Civ. A. No. 04-384-GWU (E.D. Ky) to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income. After a period of administrative reconsideration prompted by the Court's Memorandum Opinion, Order, and Judgment of May 31, 2005 (Tr. 347-355), it is again before the Court on cross-motions for summary judgment.

APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability

1

to do basic work activities?  If yes, proceed to step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).
5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work?  If yes, the claimant is not disabled.  If no, proceed to step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply.   Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. <u>Id</u>.  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Id</u>.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating

physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a _prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to

3

properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b),

4

416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

<u>DISCUSSION</u>

The Administrative Law Judge (ALJ) concluded that Rose, a 48 year-old former restaurant assistant manager and security guard with a high school education, suffered from impairments related to chronic obstructive pulmonary disease, mild degenerative disc disease, obesity, an anxiety disorder, and borderline intellectual functioning. (Tr. 324, 330). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that Rose retained the residual functional capacity to perform a restricted range of sedentary level work. (Tr. 334). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 334-335). The ALJ based this decision, in part, upon the testimony of a vocational expert. (Tr. 333).

5

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert Katherine Bradford included an exertional limitation to sedentary level work along with such non-exertional restrictions as (1) a need to avoid concentrated exposure to vibration or wetness, (2) a need to avoid exposure to humidity, dangerous machinery, heights, temperature extremes, and pulmonary irritants such as fumes, dust, odors, gases or poor ventilation; (3) an inability to ever climb ladders, ropes or scaffolds; (4) an inability to more than occasionally balance; (5) a "limited but satisfactory" ability to deal with the public, interact with supervisors, deal with work stresses, function independently, carry out instructions, behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability; and (6) a "seriously limited but not precluded" ability to maintain attention and concentration. (Tr. 703-704). In response, the witness identified a significant number of jobs which could still be performed. (Tr. 704). The ALJ then presented an alternative hypothetical question, changing the mental factors of the question to a "moderate" limitation of ability in such areas as dealing with the public, responding to work setting changes, carrying out detailed instructions, maintaining attention and concentration, completing a normal workday and workweek without interruption and performing at a consistent pace without an unreasonable length and number of rest periods, performing within a schedule, and maintaining attendance and being punctual within customary tolerances. (Tr. 705). The expert testified that the previously-cited occupations could still be performed. (Tr. 705). Therefore,

6

assuming that the vocational factors considered by Bradford fairly depicted Rose's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

This action was previously remanded by the Court because the hypothetical question presented by the ALJ failed to fairly characterize Rose's mental problems. Examining psychologists Pamela Starkey and Reba Moore as well as the non-examining medical reviewers all reported the existence of more severe mental limitations than found by the ALJ. (Tr. 354-355). Upon remand, the problem has been cured.

Following the remand of the action, Rose was again examined by Moore in November of 2004. The examiner indicated that the plaintiff would be somewhat impaired in his ability to concentrate and would have difficulty with persistence and pace. (Tr. 384). The vocational factors considered by Bradford were essentially consistent with this opinion. This opinion offsets that of Starkey. (Tr. 212-219). The mental factors considered by the vocational expert were also compatible with the mental limitations identified by Psychologists Laura Cutler (Tr. 258-259) and Ann Demaree (Tr. 587-588), each a non-examining medical reviewer.[1]   These reports provide substantial evidence to support the administrative decision.

The Court notes that Psychologist John Goff testified at the administrative hearing as a medical advisor. Goff reported a number of reasons why the mental limitations indicated by Moore in April of 2003 (Tr. 239-240) were not well-supported by the record (Tr. 694-695). Goff also stated that he believed

---

[1]Ilze Sillers, another medical reviewer, also included a "moderate" limitation on the ability to set realistic goals or make plans independently of others, a factor not presented to the vocational expert. (Tr. 261). This factor was not binding on the ALJ.

that the claimant's ability to demonstrate reliability would be "poor" rather than "fair." (Tr. 696). The vocational expert indicated that such a restriction would preclude employment. (Tr. 706). The ALJ rejected this finding because the limitation related to physical, rather than mental, problems. (Tr. 330). Even if this action were improper, the ALJ could still rely upon Moore's November, 2004 opinion as well as the findings of the medical reviewers.   Therefore, substantial evidence supports this portion of the administrative decision.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error.   Rose was found capable of performing a restricted range of sedentary level work in an administrative decision which became final on October 22, 2002. (Tr. 69-82). Principles of res judicata require that the administration be bound by this decision unless a change of circumstances is proved upon a subsequent application. Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997). Acquiescence Ruling 98-4(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding..." The ALJ's findings of a restricted range of sedentary level work is in accord with these directives.

Dr. Kenneth Phillips (Tr. 241-249) and Dr. Jorge Baez-Garcia (Tr. 631-639) reviewed the record and did not believe it supported a change in Rose's residual functional capacity from the prior denial decision. More severe physical restrictions than those found by the ALJ were not identified by such treating and examining sources as Dr. Mark Carter (Tr. 220-228) and Dr. Bobby Kidd (Tr. 371-378).   These reports provide substantial evidence to support the

8

administrative decision.

Dr. Richard Park, a treating source, opined in February of 2004 that, in consideration of the combination of his impairments as well as his education and training, there would not be many jobs Rose could perform. (Tr. 298). This is a vocational opinion outside the doctor's expertise. In December of 2005, Dr. Park indicated that the plaintiff would be precluded from performing strenuous activities and should avoid exposure to dust, fumes and temperature variations. (Tr. 649). These restrictions are consistent with those considered in the hypothetical question. Thus, this opinion also supports the administrative decision.

Dr. Gopal Rastogi examined Rose in March of 2003 and opined that he was not able to engage in gainful employment due to his asthma and low back pain. (Tr. 231). The doctor did not identify objective medical data supporting a finding that the plaintiff's condition had deteriorated since the prior denial decision in October of 2002. Despite his complaints of asthma, Rose continued to smoke cigarettes. (Tr. 231). Physical examination revealed that the claimant was neurologically intact and no precise objective findings were made as to range of motion. (Tr. 231). The physician found no edema, cyanosis or clubbing of the extremities and heard no wheezes or rales in the lungs. (Tr. 231). The physician indicated that he had performed no investigations, presumably Spirometry or x-rays. Finally, Dr. Rastogi's opinion would be outweighed and offset by those of the other treating and examining physicians.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be

9

entered simultaneously consistent with this opinion.

This the 24 day of January, 2007.

G. WIX UNTHANK
SENIOR JUDGE